(Not for publication)                                    (Docket Entry No. 27)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                              :
PHYLLIS HICKS,                                :
                                              :
                        Plaintiff,            :        Civil No. 06-5699 (RBK/JS)
                                              :
              v.                              :        **OPINION**
                                              :
MICHAEL W. WYNNE,                             :
                                              :
                        Defendant.            :
_____       :

**KUGLER**, United States District Judge:

        Plaintiff Phyllis Hicks ("Plaintiff"), a former civilian employee of the United States Air

Force, brings this suit pursuant to Title VII of the of the Civil Rights Act, 42 U.S.C. § 2000e, et

seq., alleging that she was denied promotion, discriminated against and harassed based on her

race, sex and color, retaliated against for engaging in protected EEO activity, and constructively

discharged.  Presently before the Court is a motion by Defendant Michael W. Wynne

("Defendant"), Secretary of the Air Force.  Defendant has moved to dismiss Plaintiff's failure to

promote and constructive discharge claims; to dismiss or, in the alternative, for summary

judgment on Plaintiff's disparate treatment claim; and for summary judgment on Plaintiff's

harassment and retaliation claims.  For the reasons set forth below, Defendant's motion will be

denied with respect to Plaintiff's failure to promote and constructive discharge claims, and

granted with respect to Plaintiff's disparate treatment, harassment, and retaliation claims.

**I. BACKGROUND[1]**

Plaintiff worked as a Marketing Assistant in the 305th Services Squadron, McGuire Air Force Base, from October 9, 1994 until October 31, 2003.  In late 2001, Plaintiff applied for the position of Director of the Marketing department.  She was interviewed, but another applicant, Monty Dunn, was chosen for the position.

In September 2002, Dunn reorganized the Marketing office.  The office consisted of one room with three work stations.  The room had two doors on the same side of a wall, each leading to the main hallway.  Dunn believed that having both doors open created wasted production space and distracting foot traffic, so he decided to close one of the doors.  Plaintiff was given the choice of sitting in the cubicle that was moved to the corner where the closed door was located or sitting by a window.  Plaintiff told Dunn that she did not want to sit by the window because it was cold there.  Dunn moved her desk to the corner.  Plaintiff claims that equipment, shelves, and supplies were moved from the storage room to the Marketing department and placed near her desk.  Dunn denies that any items were ever stored in Plaintiff's work area.

Around the same time, Plaintiff was informed that the building in which she worked was going to be repainted and new carpeting was going to be installed.  Employees were given the choice of assisting with the renovations, being assigned a new temporary work area, or taking leave.  Plaintiff was assigned to the fitness center, where she had a telephone and a computer that was not connected to the internet.  Plaintiff found the fitness center to be too cold, and decided to

---

[1]  Plaintiff has not contested any of the facts set forth by Defendant.  Therefore, the facts set forth by Defendant and supported by evidence are deemed admitted.  See Longoria v. New Jersey, 168 F. Supp. 2d 308, 312 n.1 (D.N.J. 2001).

take annual leave.

As part of the office upgrade, Dunn was directed to get a new desk and production tables for the Marketing office.  Plaintiff did not receive a new desk or a new computer, while other employees did.

Also in the fall of 2002, Dunn instituted a work order system.  Customers were required to fill out a marketing request form, signed by a supervisor, and submit it to Dunn.  Dunn told both his internal staff and outside managers that personnel had to speak to him directly to get projects completed.

On November 13, 2002, Dunn issued a performance evaluation of Hicks, giving her an overall rating of "very good."  Dunn noted, however, that Plaintiff needed to improve her initiative and spend less time socializing; improve her communication with Dunn; upgrade her skills; and complete tasks.

On November 21, 2002, Plaintiff entered the Marketing office and ordered her co-worker, Donald Lehr, to leave the office.  When Dunn questioned Plaintiff, she began yelling and using profanities, repeating "the [expletive] stops now." (Def.'s Ex. 1 at 936-38.)  Approximately one hour after this incident, Plaintiff told Lieutenant Colonel Rhonda Schlumpberger, Commander of the 305th Services Squadron, that she created a scene because "it had to stop."  (Def.'s Ex. 1 at 133.)  After this incident, a Notice of Proposed Suspension was issued.  Plaintiff submitted the following response: "Due to a build-up of stress, I do not have total re-call [sic] of my behavior on the day in question or several days that followed.  Because of this, I have sought both medical attention and behavioral counseling." (Id. at 230).  In her testimony to the Office of Complaint Investigation (OCI) investigator, Plaintiff said "I can't really tell you definitely everything that

3

took place" on November 21, 2002.  (Id. at 661.)  When asked if she "cursed out [her]

supervisors," Plaintiff said "[i]f that's what they say."  (Id. at 665-66.)  Ultimately, Plaintiff was

suspended for two days.  Due to an error, she was paid for those two days.

On November 21, Plaintiff requested sick leave.  On November 22, she requested sick

leave for November 22 and leave for November 25 through November 29.[2]  On November 27,

Plaintiff requested sick leave for December 2 through December 6.  None of her sick leave

requests were accompanied by medical documentation, which is required by the applicable Air

Force Manual for sick leave of more than three consecutive days.  Dunn left Plaintiff messages

on December 6 and 9, informing her that she needed to provide medical documentation and that

she would be marked as absent without leave if she failed to do so.  Plaintiff did not submit

medical documentation by the close of the pay period, and her timecard indicated that she was on

leave without pay for the entire pay period.  However, Dunn asked payroll to manually cut

Plaintiff a check the day after payroll was submitted.

Plaintiff married Barrett Hicks in August of 2003.  Mr. Hicks lived in Virginia at that

time.  Plaintiff resigned effective October 31, 2003, and stated in her resignation letter that her

"heart and mind can't take working in the environment that has been created."  (Def.'s Ex. 1 at

1025.) Plaintiff currently lives in Virginia with her husband.

On November 28, 2006, Plaintiff filed a complaint in this Court alleging that she was

denied promotion, discriminated against and harassed based on her race (black), sex and color

(black/brown), retaliated against for engaging in protected EEO activity, and constructively

---

[2] Plaintiff listed November 25 through November 29 on the line for annual leave, but did not check the box for annual leave.

4

discharged.  On October 1, 2008, Defendant filed the motion now before the Court, seeking to

dismiss this action in its entirety.  Plaintiff's attorney sought an extension of time in which to

respond to the motion, and he was entitled to such an extension under the Local Rules.  See L.

Civ. R. 7.1(d)(5).  However, he never filed any opposition to Defendant's motion.

## II. STANDARDS

Defendant has moved to dismiss Plaintiff's claims of failure to promote and constructive

discharge, arguing that Plaintiff has failed to exhaust her administrative remedies.  This type of

motion is generally treated as a 12(b)(6) motion or, if the parties rely on matters outside the

pleadings, as a motion for summary judgment.  Robinson v. Dalton, 107 F.3d 1018, 1022 (3d

Cir. 1997).  Defendant has also moved to dismiss Plaintiff's disparate treatment claim for failure

to state a claim pursuant to Rule 12(b)(6) or, in the alternative, for summary judgment on this

claim.  Finally, Defendant has moved for summary judgment on Plaintiff's claims of harassment

and retaliation.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint or portions of a

complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed.

R. Civ. P. 12(b)(6).  When reviewing a Rule 12(b)(6) motion to dismiss, the Court must "accept

all factual allegations in the complaint as true and give the pleader the benefit of all reasonable

inferences that can be fairly drawn therefrom."  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir.

1993).  However, the Court may also consider exhibits submitted by the defendant, "such as

public records and other indisputably authentic documents underlying the plaintiff's claims."

Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003).  Dismissal

of a complaint pursuant to Rule 12(b)(6) is appropriate "only if it is clear that no relief could be

granted under any set of facts that could be proved consistent with the allegations." <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). "[T]he party moving for summary judgment under Fed.R.Civ.P. 56(c) bears the burden of demonstrating the absence of any genuine issues of material fact." <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). If the moving party satisfies its burden, the nonmoving party must respond by "set[ting] out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

## III. DISCUSSION

### A. Failure to Promote and Constructive Discharge Claims

Defendant argues that Plaintiff's failure to promote and constructive discharge claims should be dismissed because Plaintiff did not exhaust her administrative remedies with respect to these claims. In a Title VII case, the plaintiff must exhaust available administrative remedies before filing suit in federal court. <u>Robinson</u>, 107 F.3d at 1020. Where the plaintiff is a federal employee, exhaustion of remedies "requires both consultation with an agency counselor and

6

filing a formal EEOC complaint within the required times." Id. at 1021.  Under current EEOC

regulations, a plaintiff "must initiate contact with [an EEO] Counselor within 45 days of the date

of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of

the effective date of the action." 29 C.F.R. § 1614.105(a)(1).  Further, a plaintiff must file a

complaint within fifteen days of receiving a notice of the right to do so.  See 29 C.F.R. §§

1614.105(d), 1614.106(b).  "[F]ailure to exhaust administrative remedies is an affirmative

defense, [so] the defendant bears the burden of pleading and proving that the plaintiff has failed

to exhaust administrative remedies."  Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).

       With respect to Plaintiff's failure to promote claim, Defendant argues that Plaintiff did

not consult with an EEO counselor within 45 days of her non-selection for the position of

marketing director.  However, neither Plaintiff's complaint nor the administrative record

provided to this Court makes clear if and when Plaintiff contacted an EEO counselor about her

failure to promote claim.

       Defendant also argues that Plaintiff did not raise her failure to promote or constructive

discharge claim in the EEO complaint for which she seeks judicial review.   However, it is not

clear that Plaintiff seeks judicial review of only one EEO complaint.  In fact, Defendant mentions

in his brief that Plaintiff filed a separate EEO complaint in which she raised a failure to promote

claim and a constructive discharge claim.

       Finally, Defendant argues that Plaintiff's constructive discharge claim was still pending

before the Air Force at the time the complaint in this Court was filed.  However, Defendant has

not provided the administrative record of the constructive discharge claim to the Court, and

therefore the Court cannot evaluate the merits of this argument.

In sum, it is not "clear that no relief could be granted under any set of facts that could be proved consistent with" Plaintiff's allegations of failure to promote and constructive discharge. See Hishon, 467 U.S. at 73.  Thus, Defendant's motion to dismiss these two claims will be denied.

## B.  Disparate Treatment, Harassment and Retaliation

Plaintiff's remaining claims are based on the following nine allegations: (1) she was assigned untimely projects with unreasonable deadlines; (2) she did not receive a new computer and desk when other employees did; (3) McGuire personnel were instructed not to communicate with her; (4) her cubicle was moved into the corner of the room where it blocked a doorway and her desk was placed facing the wall; (5) equipment, shelves and supplies were placed near her cubicle; (6) she was temporarily assigned to work in the Fitness Center, where she was so cold that she had to take leave; (7) she received a performance evaluation of "very good" with work behavior elements totaling nineteen points; (8) she was placed on leave without pay for the pay period ending December 7, 2002; (9) she received a Notice of Decision to Suspend for two days for displaying inappropriate behavior on November 21, 2002.

### 1.  Disparate Treatment

Defendant argues that Plaintiff's disparate treatment claim should be dismissed for failure to state a claim because she has failed to establish a prima facie case.  In the alternative, Defendant argues that he is entitled to summary judgment because Plaintiff cannot show that Defendant's proffered reasons for the Air Force's actions were a pretext for discrimination.

Under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green,

411 U.S. 792 (1973),[3] a plaintiff alleging disparate treatment must set forth a prima facie case of

discrimination by demonstrating that:

> (1) s/he is a member of a protected class; (2) s/he was qualified for the position
> s/he sought to attain or retain; (3) s/he suffered an adverse employment action;
> and (4) the action occurred under circumstances that could give rise to an
> inference of intentional discrimination.

Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas, 411 U.S. at

802; Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1066 n. 5 (3d Cir. 1996) (en

banc)).  "If a plaintiff establishes a prima facie case of discrimination, then an inference of

discriminatory motive arises and the burden shifts to the defendant to articulate a legitimate,

non-discriminatory reason for the adverse employment action."  Makky, 541 F.3d at 214 (citing

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993)).  "If the defendant does so, the

inference of discrimination drops and the burden shifts back to the plaintiff to show that the

defendant's proffered reason is merely pretext for intentional discrimination."  Makky, 541 F.3d

at 214 (citing St. Mary's, 509 U.S. at 507-08).

Defendant argues that Plaintiff cannot show that the incidents she claims were

discriminatory rose to the level of adverse employment actions or that other similarly situated

employees outside of her protected class were treated more favorably than she.  An adverse

employment action can be a discharge, a failure to hire, or any action that "alters the employee's

compensation, terms, conditions, or privileges of employment, deprives him or her of

employment opportunities, or adversely affects his or her status as an employee."  Robinson v.

---

[3] A Title VII disparate treatment claim can be analyzed either under the McDonnell Douglas "pretext" framework or the "mixed motive" framework.  Makky v. Chertoff, 541 F.3d 205, 213 (3d Cir. 2008).  Here, Plaintiff has not advanced a mixed motive theory, and therefore the Court will apply the McDonnell Douglas framework.

City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997) (internal quotation marks and citation omitted), abrogated in the context of retaliation claims by Burlington Northern and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).  "[N]ot everything that makes an employee unhappy qualifies as [an adverse employment action], for otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit."  Robinson, 120 F.3d at 1300 (internal quotation marks and citation omitted).

The Court finds that Plaintiff's claims that she was given assignments with short deadlines, did not receive a new desk or computer, had her desk moved, had items stored near her cubicle, and was temporarily assigned to work in the Fitness Center while her office was renovated do not rise to the level of adverse employment actions.  Further, Plaintiff's claim that other personnel were instructed not to speak to her is not an adverse employment action.  See Robinson, 120 F.3d at 1300; McDonnell v. Cisneros, 84 F.3d 256, 258 (7th Cir. 1996) (suggesting that "anger, irritation, dirty looks, [and] even the silent treatment" do not constitute adverse employment action).  Nor is Plaintiff's receipt of a performance evaluation rating of "very good" and work behavior elements totaling nineteen points an adverse employment action. See Douglas v. Donovan, 559 F.3d 549, 552 (D.C. Cir. 2009) (noting that poor performance evaluation alone, without indication that evaluation caused tangible harm, is not adverse employment action); Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996) (finding no adverse employment action where lower performance evaluation "did not alter [plaintiff's] responsibilities or salary").

Whether the two additional incidents Plaintiff alleges were discriminatory, her two-day suspension and her placement on leave without pay status, were in fact adverse employment

10

actions depends on issues that cannot be resolved by looking at the pleadings.  Further, with respect to whether similarly situated employees outside of Plaintiff's protected class were treated more favorably than she was, Defendant's argument is based on a lack of evidence; this argument is not appropriate in the context of a motion to dismiss.

However, Defendant has also moved for summary judgment, arguing that Plaintiff cannot rebut Defendant's legitimate non-discriminatory reasons for the Air Force's actions.  Defendant argues that Plaintiff was placed on leave without pay status because she failed to submit documentation to support her request for medical leave.  Plaintiff has offered no evidence to rebut this explanation.  Further, Defendant argues that Plaintiff was suspended for two days because she yelled and cursed at her supervisor.  Again, Plaintiff has failed to present any evidence to refute this explanation.

In sum, seven of the incidents that Plaintiff alleges constituted disparate treatment do not rise to the level of adverse employment actions, and Defendant has offered legitimate non-discriminatory reasons for the remaining two incidents, which Plaintiff has failed to rebut.  Therefore, Defendant's motion with respect to Plaintiff's disparate treatment claim is granted.

### 2. Harassment

Defendant argues that he should be granted summary judgment with respect to Plaintiff's harassment claim because Plaintiff has failed to show that any of Dunn's actions were motivated by Plaintiff's race, sex, color or EEO activity.  Defendant further argues that the incidents of which Plaintiff complains were not severe or pervasive enough to significantly alter the conditions of her employment.  Because the Court finds that Plaintiff has not presented any evidence to show that the actions of which she complains were motivated by her race, sex, color

11

or EEO activity, Defendant's motion for summary judgment is granted.

In order to establish a harassment claim, a plaintiff "must show that (1) [s]he suffered intentional discrimination because of [her protected status]; (2) the discrimination was pervasive and regular; (3) it detrimentally affected [her]; (4) it would have detrimentally affected a reasonable person of the same protected class in [her] position; and (5) there is a basis for vicarious liability." Cardenas v. Massey, 269 F.3d 251, 260 (3d Cir. 2001).

To satisfy the first element, intentional discrimination, Plaintiff must show that her race, sex, color, or EEO activity was a "substantial factor in the harassment." Aman, 85 F.3d at 1083. Plaintiff has offered no evidence to show that race, sex, color or EEO activity was the motivation for Dunn's actions. Defendant cites to several instances where Plaintiff was unable to offer concrete reasons why she believed she was discriminated against based on her race, color, sex or EEO activity. For example, when Plaintiff was asked why she believes she was assigned duties in an untimely fashion and with unreasonable deadlines based on her race, color or gender, Plaintiff responded, "because [Dunn] was trying to force me out." (Def.'s Ex. 1 at 625.) Further, Plaintiff admitted that she sometimes had short deadlines before Dunn was the Marketing Director. (Def.'s Ex. 2 at 34.) When asked why she believed her evaluation score was affected by her race, Plaintiff responded that it was because of the way Dunn treated her. She explained that Dunn pointed at her when he spoke to her and yelled at her. She also said, however, that Dunn spoke to Noel Grabel, a white employee, the same way. (Def.'s Ex. 1 at 612-13.) At her deposition, Plaintiff testified that Dunn treated Grabel, whom Plaintiff described as "imposing," "a little bit" differently than he treated Plaintiff. She testified that he was "also rude [and] demeaning" to Grabel, but "less harsh." (Def.'s Ex. 2 at 30.)

12

The Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's harassment claim because Plaintiff has presented no evidence that her race, color, sex or EEO activity was a substantial motivation for the acts about which she complains.  The Court need not, therefore, evaluate whether these acts were severe or pervasive enough to alter the conditions of her employment.

### 3.  Retaliation

Defendant argues that he should be granted summary judgment with respect to Plaintiff's retaliation claim because Plaintiff has failed to rebut the Defendant's proffered legitimate non-discriminatory reasons for taking the actions at issue.  To defeat a motion for summary judgment, a plaintiff must first produce evidence to establish a prima facie case of retaliation, that is, evidence that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."  Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir.1995)).  "If the employee establishes this prima facie case of retaliation, . . . 'the burden shifts to the employer to advance a legitimate, non-retaliatory reason' for its conduct . . . ."  Moore, 461 F.3d at 342 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500-01 (3d Cir.1997)).  If the employer does so, the plaintiff must produce evidence from which a jury could reasonably conclude "that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action."  Moore, 461 F.3d at 342 (quoting Krouse, 126 F.3d at 501).

Here, Defendant argues that only two events Plaintiff complaints of occurred after she

contacted an EEOC counselor on November 12, 2002: her suspension and her temporary

placement in a leave without pay status.  Defendant argues that he has offered a legitimate non-

discriminatory reason for both of these actions, and that Plaintiff has failed to come forward with

evidence that these explanations were pretext.  As discussed above, Defendant has explained that

Plaintiff was suspended for yelling and cursing at her supervisor and that she was placed on leave

without pay because she failed to submit documentation to support her requests for medical

leave.  Further, Plaintiff has not offered any evidence to show that these explanations are pretext.

Therefore, the Court will grant Defendant's motion for summary judgment as to Plaintiff's

retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion is denied with respect to Plaintiff's failure

to promote and constructive discharge claims and granted as to Plaintiff's disparate treatment,

harassment and retaliation claims.  An accompanying order shall issue today.


Dated:   5-8-09                              /s/ Robert B. Kugler
                                             ROBERT B. KUGLER
                                             United States District Judge

14